Ross v. Loomis.

●  _____

## Ross v. Loomis.

1. **Practice:** TRIAL OF EQUITY CAUSE: EVIDENCE: HOW TAKEN AND MADE
   PART OF RECORD: TRIAL DE NOVO.   Where the court, on the trial of
   an equity cause, orders the evidence to be taken down in short-hand, and
   it is so done, and the short-hand report is properly certified by the judge
   and made a part of the record, and it is afterwards transcribed by the
   reporter, together with the judge's certificate, and the transcript certified
   by the reporter to be correct and complete, *held* that this is a compliance
   with the provision of the statute that the evidence be taken down in writ-
   ing; and upon evidence so taken a trial *de novo* may be had on appeal.
   *Godfrey v. McKean*, 54 Iowa, 127, distinguished.

2. **Title to Real Estate:** INCOMPETENT EVIDENCE TO ESTABLISH: RE-
   CITALS OF DEATH AND HEIRSHIP IN DEED.   Where plaintiff claimed
   title from M., but showed no conveyance from him, but, instead thereof,
   a conveyance which recites his death, and that the grantors are his

widow and heirs at law, *held* that such deed was not competent evidence, as against a stranger thereto claiming under a deed direct from M., of the truth of such recitals. *Costello v. Burke*, 63 Iowa, 361, followed.

3. ————: DEED FROM WIDOW AND HEIRS: EVIDENCE TO PROVE DEATH AND HEIRSHIP: HEARSAY. The fact that one has died, and that certain others are his widow and heirs at law, cannot be shown by proof of the general repute among the neighbors of the person alleged to be dead. Such evidence is mere hearsay, and incompetent to establish the title of the alleged widow and heirs to the real estate of the alleged decedent.

4. ————: ACTION TO QUIET: FAILURE TO PROVE: EVIDENCE CONSIDERED AND DECREE FOR DEFENDANT ON CROSS-BILL. In this case, where plaintiff brought his action to quiet his title, but failed to prove that he had any, and it appeared that his grantor had obtained his alleged title by a quit-claim deed from a widow and heirs for a trifling consideration, and that if plaintiff did not know, his grantors did, that defendant claimed title to the land and paid taxes on it, though some of the deeds in his chain of title were lost and not of record, and defendant fairly established his title through the lost deeds, *held* that defendant was entitled to a decree quieting the title in him as prayed in his cross-bill.

*Appeal from Guthrie Circuit Court.*

THURSDAY, OCTOBER 9.

THIS is an action in equity, and involves the title to one hundred and twenty acres of land. The plaintiff claims to be the owner in fee of the land, and prays that his title may be quieted. The defendant claims that he is the absolute owner, and, by a cross-petition, demands that the title may be quieted in him Upon a trial in the circuit court, the petition and cross-petition were dismissed without prejudice, and both parties appeal.

*Willard & Hopper, W. D. Kelsey, C. A. & J. G. Berry,* and *G. E. McCaughan*, for plaintiff.

*Fogg & Neal*, for defendant.

ROTHROCK, CH. J.—I. Counsel for plaintiff make the question that the cause is not in a condition for trial *de novo*

Ross v. Loomis.

**1. PRACTICE: trial of equity cause: evidence: how taken and made part of record.** in this court, and by a motion filed in the case they ask that the evidence be stricken from the abstract, because it is not identified by the proper certificates. The trial was had partly upon depositions and other record evidence, and partly upon the testimony of witnesses taken down in short-hand by the reporter of the court. The short-hand reporter noted the documentary evidence in his report, and at the close of the trial the judge indorsed a certificate upon the notes of the short-hand reporter, to the effect that it was the official report of the cause, "and that the same, together with the documentary evidence therein referred to, contains all the evidence offered, the objections and rulings made, and exceptions taken on the trial of said cause, and the same is made part of the record herein." The short-hand reporter transcribed the notes of evidence, including the certificate of the judge, and to the whole he appended his own official certificate as to its correctness and completeness.

The plaintiff cites us to the case of *Godfrey v. McKean*, 54 Iowa, 127, in support of the motion. That case holds that stenographic notes cannot be regarded as such a writing as is contemplated by the statute, chapter 145, Laws of 1878. But it does not hold that, where the court orders the evidence to be taken down in short-hand, and it is so done and properly certified, and it is afterwards transcribed, that this is not a compliance with the provision of the statute that the evidence shall be taken down in writing. In this case, the reporter's notes were ordered to be made part of the record. In the case cited, the plaintiff sought to require the judge to order the reporter to transcribe the notes, without making any provision for paying the reporter for such service, and it was held that no such requirement could be made. We do not think that it should be required that the translation or transcript should be made at the time of the trial, in order to comply with the provision of the statute that the evidence shall be taken down in writing.

II. It was conceded by the parties upon the trial that the land in controversy, at one time, was the property of one Robert Y. McCorkle, and that he was the common source of title. The plaintiff, to sustain his title, introduced in evidence a quit-claim deed of the land, executed by Sarah E. McCorkle and some few other persons, by which they quit-claimed all of their interest in the land to W. D. Kelsey. The deed was dated June 29, 1882, and recited that the grantors were residents of Rush county, Indiana, and that they were the widow and heirs of Robert G. McCorkle. Some question is made as to whether the initial letter written in the name was the letter " G." or " Y." We attach no importance to this, because, as between these parties, the recitals above named are wholly immaterial. They are not competent evidence to prove either the death of McCorkle or the heirship of the grantors. Whatever force they might have as between the parties to the instrument, or their privies, or persons holding under them, they are of no value in this controversy, because the defendant claims title under an alleged conveyance by Robert Y. McCorkle. *Costello v. Burke*, 63 Iowa, 361.

*2. TITLE to real estate: incompetent evidence to establish: recitals of death and heirship in deed.*

It was necessary, therefore, for the plaintiff to prove that McCorkle, the owner of the land, was dead when the conveyance in question was made, and that the grantors in the deed were his widow and heirs. To make this proof, W. D. Kelsey, the grantee in the deed, was introduced as a witness. It appears from his testimony that he resides in Guthrie county, in this state, and that he went to Rushville, Indiana, after the execution of the deed, and was there informed that that was the former home of Robert Y. McCorkle. We quote from his testimony, as presented in plaintiff's abstract:

*3. ———: deed from widow and heirs: evidence to prove death and heirship: hearsay.*

"That was the general reputation there in that part of the country. It was the general repute that that was his home. I talked with his widow, with the citizens in the town of

Rushville, with the lawyers who represented the estate of Robert Y. McCorkle, with the neighbors and friends and relatives of Robert McCorkle, and it was the general repute and reputation among the neighbors and relatives of Robert Y. McCorkle that he was dead at the time of the execution of this deed. It was the general repute and reputation among the relatives and family of Robert Y. McCorkle that he was dead when this deed was executed, and it was the general reputation and repute among the relatives and family of Robert Y. McCorkle that the parties who signed this deed were his children and heirs."

It is scarcely necessary to say that this was the merest hearsay, when applied to the issue between these parties. The death of McCorkle and the heirship of the grantors in the deed were not facts that could, as between these parties, be proved by common repute.

It was not a question of pedigree, which could be shown by the declarations of deceased relations. See Greenleaf on Evidence, Vol. 1, § 99, where it is said: "Hearsay evidence is uniformly held incompetent to establish any *specific* fact, which in its nature is susceptible of being proved by witnesses who can speak from their own knowledge."

Another objection to the testimony of this witness is, that it is not even shown thereby that the McCorkle of whom he speaks was reputed to be the identical McCorkle who owned the land in controversy. It appears from other evidence in the case that the Robert Y. McCorkle who owned the land in controversy was living in 1863, and, if his widow was living in 1882, when this conveyance was made to Kelsey, it was not difficult to prove the facts of the death and heirship.

This being all the proof offered upon these questions of fact, the court properly dismissed the plaintiff's petition, without reference to the questions of notice and fraud, which we will hereafter consider. It is true, the plaintiff showed a regular line of conveyances from Kelsey down to himself; but there was no question of possession in the case, because

the land was wild and uncultivated, and the first actual posession of it was that of the plaintiff, which commenced after he received the conveyance for it.

III.   It remains to be determined whether, under the evidence introduced by the defendant, the court should have quieted the title to the land in him.   He claimed title to the land through a direct conveyance from Robert Y. McCorkle and wife to one Hunt, and from Hunt and wife to one Hall, and from Hall, through some other grantors, down to himself.   He showed, by what we regard as undoubted evidence, that the deeds from McCorkle to Hunt, and from Hunt to Hall, were lost.   They had not at any time been recorded or filed for record in Guthrie county.   All of the other deeds had been recorded.   Some of them had defective acknowledgments, but their execution and delivery were proved by the grantors and grantees.   Some question is made as to whether the proof of the contents of the lost deeds was sufficient? We think it was.   It is true, the witnesses did not undertake to give the exact language of the deeds.   But, when taken in connection with the consideration paid, and circumstances of the transactions between the respective parties to the conveyances, there can be no doubt that they were made as claimed and stated by the witnesses.

*4. ———: action to quiet: failure to prove: evidence considered and decree for defendant on cross-bill.*

We think that the court should have entered a decree quieting the title in defendant.   And, in so holding, there are other facts in the case to which we deem it proper to briefly refer. It appears from the testimony of Kelsey that at the time he purchased the land it was worth $1,200, and that he had paid for the quit-claim made to him the sum of $104.   He knew at the time that the defendant was claiming the land, under a conveyance which was of record, and that he had paid the taxes on the land from the date of his conveyance, which was in 1872, down to the time Kelsey made the purchase.   And we think the evidence shows that all of the intermediate grantees down to and including the plaintiff's grantor knew

that the defendant had paid the taxes as above stated, and that he claimed to own the land. H. N. Ross, the plaintiff's grantor, is the father of the plaintiff. Plaintiff is a young man aged twenty-four years, and resides with his father, and claims to have bought the land for $1,200 in cash, and that he is an innocent purchaser. The evidence is abundant that his father knew of the defendant's claim that he was the owner of the land.

Now, while we are not prepared to hold, under the evidence, that plaintiff should be charged with notice of defendant's rights, yet, as he has failed to establish title to the land in himself, the above facts go far to reconcile us to the correctness of the holding that the title should be quieted in the defendant. As matter of right, the plaintiff has no cause to complain. There is no persuasive reason why he should be granted what is, in effect, a new trial in this case. His counsel submitted his case for a final decree without proving title, and they demanded a decree quieting title. The defendant proved that he had title, and that should be an end of the case.

The decree of the circuit court dismissing the plaintiff's petition will be affirmed, and the decree dismissing defendant's cross-bill will be reversed, and a decree quieting the title in the defendant will be entered in this court, or the cause will be, at the defendant's option, remanded to the court below for that purpose.

Affirmed on plaintiff's appeal, and, on defendant's appeal,

REVERSED.